### BEULAH TYER *v.* RICHARD A. LILLY ET AL.

DEEDS. *Construction. Grantees.*

> A deed, inartificially and carelessly drawn, made to a person designated by name (who at its date had one child), and his children, as parties of the second part, and which granted the land "to the *party* of the second part and *his* heirs and assigns," with *haben-. dum* "to have and to hold unto the *party* of the second part, *their* heirs and assigns," conveyed the land jointly to the grantee designated by name and his child.

FROM the chancery court of Pontotoc county.

HON. HENRY L. MULDROW, Chancellor.

Mrs. Tyer, appellant, was complainant in the court below; Lilly and another, appellees, were defendants there. From a decree in defendants' favor the complainant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mitchell & Fletcher*, for appellant.

If the deed really conveys the land to C. J. Bolen and children, its effect is to render C. J. Bolen and complainant tenants in common of the forty acres in controversy,—as much so as if it had been to C. J. Bolen and Beulah Bolen by name; it being admitted that complainant was the only child in. *esse* when the deed was made. *Brabham* v. *Day*, 75 Miss., 923 (23 So., 578). We cheerfully concede the well established rule of law in this state, that, where there is an irreconcilable conflict between the granting clause and the other parts of the deed, the granting clause will prevail, where its meaning is

clear and unambiguous.   We do not question the authority of
*Robinson* v. *Payne*, 58 Miss., 690, nor of *Dunbar* v. *Aldrich*,
79 Miss., 698 (31 So., 341).   Indeed, we invoke the authority
of these cases, as lending support to our contention, for in
both cases the court is at pains to say that the clauses must be
clearly irreconcilable, and the meaning of the granting clause
must be clear and unambiguous.   In the *Robinson case* the
granting clause clearly created an estate in fee-simple, and the
*habendum* clearly created a life estate.   The clauses could not
be reconciled, and the granting clause, being of superior dig-
nity, prevailed.   But the court says "that it gives way, as all
rules of construction must, where there is one clear and unmis-
takably expressed intention."   So in the *Dunbar case* the con-
flict between the granting clause and the recitals is sharp and
clearly defined.   Where the deed conveyed land to Ida V. Lee
and children forever, and for her own benefit and behoof, it
was held that Ida V. Lee and children took the land as tenants in
common.   *Moore* v. *Lee* (Ala.), 17 So., 15.   If certainty ap-
pears in a deed, that part which is certain must be referred to,
to explain what is indefinite, and in this connection the recitals
in the premises of a deed are important to explain the motives
and reasons upon which the deed is founded.   *Williams* v.
*Claiborne*, 7 Smed. & M., 488.   All parts of the deed should
be construed together, so as to harmonize the parts, and derive
from the whole instrument the intention of the grantor.   *Goosey*
v. *Goosey*, 48 Miss., 210.   See, especially, the well considered
case of *Hart* v. *Gardner*, 74 Miss., 153 (20 So., 877.), and au-
thorities cited.   For construction of a deed somewhat similar
to this, see *King* v. *Stokes*, 125 N. C., 514 (34 S. E., 641).
The word "parties," in the granting clause, with the addi-
tional designation contained in the premises.   *Schulz* v. *Brohl*,
116 Mich., 603 (74 N. W., 1012).   Where the granting clause
entirely omits the name of the grantee, it may be supplied by
reference to other parts of the deed.   *Bay* v. *Posner* (Md.),
26 Atl., 1084.   All parts of a deed must be given effect, if

possible, and all parts are to be construed together. *Lowder-milk* v. *Bostick*, 98 N. C., 299 (3 S. E., 844); *Jones* v. *Pashby*, 62. Mich., 614 (29 N. W., 374); *Grueber* v. *Lindenmeier*, 42 Minn., 99 (43 N. W., 964); *Robinson* v. *Missisquoi R. Co.*, 59 Vt., 426 (10 Atl., 522); *Richter* v. *Richter*, 111 Ind., 456 (12 N. E., 698); *Lehndorf* v. *Cope*, 122 Ill., 317 (13 N. E., 505); *Case* v. *Dexter*, 106 N. Y., 553 (13 N. E., 449); *Smith* v. *Packhurst*, (1 Atl. Rep., 136); *Zimmer* v. *Miller*, 64 Md., 296 (1 Atl. Rep., 858); *Henderson* v. *Mack*, 82 Ky., 379; *Same* v. *Sawyer*, 99 Ga., 234 (25 S. E., 312); *Cornell* v. *Green* (C. C.), 88 Fed., 821 ; *Adams* v. *Higgins*, 23 Fla., 13 (1 So., 321); *Lemon* v. *Graham*, 131 Pa., 447 (19 Atl., 48; 6 L. R. A., 663). It is clear that Brantley Bolen intended to give complainants an interest in the lands.

*Anderson & Long*, for appellees.

Whether there is a discrepancy or repugnancy between either the recitals in the preamble of the deed, or the *habendum* clause, or both, on the one hand, and the granting clause, on the other, the latter will control. *Robinson* v. *Payne*, 58 Miss., 690; *Miller* v. *Tunica County*, 67 Miss., 651 (7 So., 429); *Dunbar* v. *Aldrich*, 79 Miss., 698 (31 So., 341). We contend that, taking the deed as a whole, it clearly appears " children" is used as a term of limitation, and not of purchase. The most reasonable and only consistent construction is that " children" is used as synonymous with " heirs." The term " their heirs," used in the *habendum*, could refer, without doing very great violence to the language, to the heirs of C. J. Bolen. We concede that the term " children" is a word of purchase, ordinarily used, but where it is necessary to give effect to the instrument, or where there are other words showing that " children" was used in the sense of " heirs," the term will be construed as a word of limitation, equivalent to " heirs," etc. Vol. 5, Am. & Eng. Ency. Law (2d ed.), 1903; *Jordan* v. *Roach*, 32 Miss., 482. If the deed was of doubtful meaning,

parol testimony was admissible to show such relation of the parties to each other, and the subject-matter and the surrounding circumstances, as adds to the interpretation of the language employed, so as to ascertain the intent; and, where the language used is susceptible of different meanings, it is competent to inquire what the parties understood it to mean. See digest of authorities in Brame & Alexander's Digest, p. 502, sec. 104; *Schlottman* v. *Hoffman*, 73 Miss., 188 (18 So., 893; 55 Am. St. Rep., 527); *Tufts* v. *Greenewald*, 66 Miss., 360 (6 So., 156). If we are right in this contention, it seems to us the intention of the grantor is clear.

*Fontaine & Fontaine*, on the same side.

Appellant has no interest in the land. The deed from B. Bolen, under which she claims title, filed as an exhibit with her bill, conveys the fee-simple title to said land to C. J. Bolen, her father. *Dunbar* v. *Aldrich*, 79 Miss., 698 (31 So., 341). While it is true there is a discrepancy between the recitals in the preamble and the granting clause and between the *habendum* and the granting clause in the deed, the granting clause in the deed is both clear and unambiguous, and prevails. *Miller* v. *Tunica County*, 67 Miss., 651 (7 So., 429); *Robinson* v. *Payne*, 58 Miss., 690. It is a settled rule of construction that the meaning or intention of the grantor is not the object sought, but what is the meaning of the words used in making the grant, and especially is it a rule of interpretation of a deed that an intention manifested in the recitals of a conveyance will be controlled by the terms of the granting clause of the deed; and, when the words in the granting part are clear and unambiguous, they cannot be controlled by the recitals or other parts of the deed. *Dunbar* v. *Aldrich*, *supra*. There is no ambiguity in the granting clause in the deed. It conveys to the party of the second part, and to his heirs and assigns, the land in fee-simple.

CALHOON, J., delivered the opinion of the court.

The whole contention for appellees is based on the force and effect of the solitary word "his" in a deed. This instrument, with the words of it pertinent to the question italicized by us, is as follows:

"*Brantley Bolen to C. J. Bolen and Children :*

"This indenture made on the third day of February A.D. one thousand eight hundred and eighty-two, and between Brantley Bolen, of Pontotoc county, party of the first part, and *C. J. Bolen and children, parties of the second part,* witnesseth: That the said party of the first part in consideration of the sum of Five hundred dollars to him paid by the *said party of the second part,* the receipt of which is hereby acknowledged *do* by these presents, grant bargain, and sell, *convey and convey* and confirm unto *the party of the second part, his heirs and assigns,* the following described lots, tracts or parcels of land, lying and being situated in the county of Pontotoc, State of Mississippi, known as described as follows: West half of the North East quarter of section five, Township nine, Range four E, to have and to hold the premises aforesaid with all the rights title privileges appurtenances and immunities thereof belonging, or in any wise appertaining both at law and equity, unto the *said party of the second part and* unto *theirs* heirs, executors and administrators and the said party of the first part for his heirs, executors and administrators *do* hereby covenant and *agree* with the *said* party of the second part, *theirs* heirs and assigns and the said party of the first part will warrant and defend the title to the said premises unto the *said* party of the second part and unto *theirs* heirs and assigns forever, against the lawful claims and demands of all persons whomsoever except on account of taxes after the 1st of January 1882. In witness whereof the said party of the first part hath hereunto set his hand and seal the day and year first above written. [Signed] B. Bolen."

When this deed was executed the grantee, C. J. Bolen, was the father of one child, Beulah, the appellant here, who was a

minor then, and still is a minor, and now the wife of R. L. Tyer. More than eleven years after its execution, and on December 23, 1893, C. J. Bolen alone conveyed the land in controversy, with general warranty, to R. G. Lilly & Son, the appellees. In 1901 Mrs. Tyer, by her husband, as next friend, filed her bill in equity against appellees, claiming an undivided one-half interest in the land as tenant in common under the deed to " C. J. Bolen and children," and praying for an accounting for rents and profits, and for partition. To this bill appellees demurred on the ground that the bill showed on its face that C. J. Bolen took the entire title to the land under the deed to " C. J. Bolen and children." This demurrer was overruled, and answer filed, and testimony taken to throw light on the intent and purpose of Brantley Bolen, the grantor, on which the court below dismissed Mrs. Tyer's bill " on bill, answer, exhibits, and proofs," and Mrs. Tyer appeals.

The briefs of counsel are quite able, and say all that may be said on either side, and have greatly aided the court in its investigation of the question involved in this litigation.

The intent of the grantor is to be ascertained from an examination of the entire instrument. This document was manifestly prepared by merely filling in the blank spaces in a printed form of a deed. The filling in is characterized by the appearance of haste and carelessness and inattention. It makes the grantor say that " he," not " I," " do grant," etc., and " do agree," etc.; and the words " theirs heirs " are three times used in the writing. The question is, must the possessive pronoun, " his," be compulsorily referred to C. J. Bolen, or should it properly be referred, according to the actual intent, gathered from the whole paper, to the " parties of the second part," as a class. It is not shown on the face of it whether the grantees are male or female,—whether it is to father or mother and son or daughter. If Beulah, the daughter, had been a son, and C. J. Bolen the mother, would " his " be wholly referred to the son? If both grantees were

males, to which one would "his" be referred? If both were females, would "his" render the whole conveyance nugatory? These questions would all be promptly answered in the negative, and they illustrate the importance of a common sense view of the whole instrument, to see what the purpose was. In its collocation with the immediate context, the word "his," if it is referred alone to C. J. Bolen, seems absolutely non-sensical and preposterous. The "indenture" is recited to be "between Brantley Bolen, party of the first part, and C. J. Bolen and children, parties of the second part." It then recites, "in consideration of $500 paid the said party of the second part," and then proceeds to say that the grantor "do grant," etc., "to the party of the second part his heirs and assigns." But if we look for light on the meaning to the *habendum* and the covenanting clauses, it becomes manifest that the word "his" referred to both the grantees. The *habendum* is "unto the said party of the second part, and unto theirs heirs and assigns," that the grantor will warrant, etc., "unto the said party of the second part and unto theirs heirs," etc. Upon the whole instrument it is plain that "his" is absurd, foolish, and unmeaning, unless applied to the parties of the second part; and we, without hesitation, so apply it. This view harmonizes the whole instrument, and takes it out from under the operation of the wholesome rule that, where the granting clause is plain, it governs, though the *habendum* clause be in conflict. Here the granting clause becomes clear only by a survey of the whole instrument.

We are content with the authorities cited in the briefs of counsel for support of this opinion.

*Reversed and remanded for accounting.*